24                    NEW YORK PRACTICE REPORTS.

Youmans agt. Board of Supervisors of Delaware Co.

# SUPREME COURT.

THE PEOPLE OF THE STATE OF NEW YORK, on the relation
of WILLIAM YOUMANS, Jr., agt. THE BOARD OF SUPER-
VISORS OF DELAWARE COUNTY.

*Assessment and taxation of rents in leases in fee — power of supervisors.*

Where the *assessors* of a town or towns, under and in pursuance of the
provisions of the Laws of 1846 (*Laws of* 1846, *p.* 466), assess the amount
of *rents* reserved in any leases in fee, chargeable upon lands within such
towns payable in money, which rents shall be assessed to the person
entitled to receive the same as personal estate for the purpose of taxa-
tion, *at a principal sum, the interest of which at the legal rate per annum
shall produce a sum equal to such annual rents*, precisely as they are
required to assess them by said act, the board of supervisors of the
county have no power or authority to change or correct, in any manner,
such assessments, although the owner of the rents was a *non-resident* of
either town.

*Held*, that the relator having been assessed, as he should have been, accord-
ing to the act of 1846, the assessors could not have lawfully reduced his
assessments if he had been a resident of their town, and had appeared
before them on the day they reviewed their assessments, although the
assessments against him were unjust, by reason of the fact that the
assessors, as shown by his petition and affidavits, had assessed all other
personal property, and also all real property in their respective towns,
at sums not exceeding one-third of the true value thereof.

The statute in relation to the assessment of real and personal property
considered and discussed, and the general mode of assessment con-
demned. There being no doubt that there is scarcely a town or ward in
the state where the assessors do not violate their oaths by assessing the
taxable property in their towns or wards, at sums much less than its true
value, at about one-third or one-quarter of its true value; while the
owner of rents reserved in leases in fee is compelled to pay the full
value of such rents, without any remedy.

*Tompkins Special Term, commencing December* 23, 1873.

*Present*—RANSOM BALCOM, *Justice.*

ORDER that defendants show cause why a peremptory mandamus should not issue against them commanding them to consider and act upon the relator's petition asking them to reduce the assessments of rents reserved to him ·in leases in fee on lands in the towns of Kortright and Davenport, in such a manner and to such an extent as to render such assessments against him just and equitable, and to exercise their discretion in respect to such assessments, &c.

The defendants received and acted on the relator's petition, and refused to change or interfere with said assessments upon the ground that they had no legal power or discretion in the matter, it being the opinion of a majority of them, from the facts before them, that said assessments were made according to the statute; said rents being reserved in money, and there being no conflict in the evidence before them as to the basis upon which the assessments in said towns were made.

The relator was not a resident of the town of Kortright or Davenport, but was a resident of the town of Delhi, at the time said assessments were made, and he still is a resident of the latter town.

*D. D. Niles*, for relator, and *relator* in person.

*William H. Johnson*, for defendants.

BALCOM, *J.*—Section 1 of chapter 327 of the Laws of 1846 (*Laws of* 1846, *p.* 466), declares that, "It shall be the duty of the assessors of each town and ward, while engaged in ascertaining the taxable property therein, by diligent inquiry to ascertain the amount of rents reserved in any leases in fee, or for one or more lives, or for a term of years exceeding twenty-one years, and chargeable upon lands within such town or ward, which rents shall be assessed to the person or persons entitled to receive the same, as personal estate, which it is hereby declared to be, for the purpose of taxation under this act, *at a principal sum, the interest of which at the legal*

*rate per annum shall produce a sum equal to such annual rents;* and in case such rents are payable in any other thing except money, the value of such annual rents in money shall be ascertained by the assessors, and the same shall be assessed in manner aforesaid."

According to the resolution adopted by the defendants, and the papers presented to me by their counsel, the assessors of the towns of Kortright and Davenport assessed the rents reserved to the relator in leases in fee on lands in those towns precisely as they were required to assess them by the aforesaid section of the law of 1846. They assessed the relator $100, for each sum of $7, rent reserved to him in every lease in fee he owned. But in the relator's petition and affidavit presented to the defendants, and in his affidavit since made and now before me, he swears that he was assessed in Kortright and Davenport the sum of $16.67 for each and every 150 acres of land in those towns covered by one of his leases in fee. I know from the amount of litigation heretofore had before me touching such lands and leases, that he has inadvertently made a mistake as to the amount of the assessments of rents against him in those towns. The amount of rent reserved in each lease of 150 acres of land, is $16.67. If the relator had been assessed only $16.67 for the rent reserved in each lease of 150 acres of land, he surely would not complain. But the truth is he has been assessed a sum for each lease of 150 acres of land, which sum if lent upon interest at seven per cent per annum, the interest for one year would amount to $16.67; and that is the way the law of 1846 required the assessors to assess him.

The relator having been assessed, as he should have been, according to the law of 1846, the assessors could not have lawfully reduced his assessments, if he had been a resident of their town and had appeared before them on the day they reviewed their assessments; although the assessments against him were unjust by reason of the fact that the assessors, as shown by his petition and affidavits, had assessed all other

personal property and also all real property in their town at sums not exceeding one-third of the true value thereof.

The law as to assessing property other than rents reserved in leases in fee, or for one or more lives, or for a term of years exceeding twenty-one years (which is provided for in the law of 1846), is that "All real and personal estate liable to taxation, shall be estimated and assessed by the assessors *at its full and true value,* as they would appraise the same in payment of a just debt due from a solvent debtor (1 *R. S., 5th ed.,* 911). That rule should be followed by the assessors in all assessments except where the assessors are specially required by law to observe a different rule (*Id.*). And they are specially required to observe the rule, respecting the assessment of rents reserved in the above mentioned leases, prescribed by the law of 1846 (*Laws of* 1846, *p.* 466). Assessors are required to make and subscribe an oath annexed to their assessment roll, in which oath they shall state, among other things, "that with the exception of those cases in which the value of the said real estate has been changed by reason of proof produced before us, we have estimated the value of the said real estate at the sums which a majority of the assessors have decided to be *the full and true value thereof,* and at which *they would appraise the same in payment of a just debt due from a solvent debtor ;* also that the said assessment roll contains a true statement of the aggregate amount of the taxable personal estate of each and every person named in such roll, over and above the amount of debts due from such persons respectively, and excluding such stocks as are otherwise taxable, and such other property as is exempt by law from taxation, *at the full and true value thereof,* according to our best judgment and belief" (1 *R. S., 5th ed., p.* 913).

The ground of the relator's grievance is not that he has been unlawfully assessed, but that the assessors violated their oaths (according to his showing), in assessing all the taxable property of other persons in the towns of Kortright and

Davenport, so far as they have assessed it at all, at less than *one-third of its true value.* I do not doubt that they have done so, or that, by pursuing that course, the relator is compelled to pay *two-thirds* more than his just proportion of the taxes he ought to pay in each of those towns; that is to say, he is obliged to pay three dollars taxes when he ought not to be required to pay a tax exceeding one dollar; because other tax-payers of those towns are not assessed sums exceeding *one-third* of the true value of their taxable property. This is truly grievous so far as the relator is concerned, and shameful as well as criminal on the part of the assessors. And this state of things exists in those towns notwithstanding the law is that every assessor who shall willfully swear false in taking and subscribing the oath to their assessment roll, " shall be deemed guilty of and liable to the penalties of willful and corrupt perjury " (1 *R. S., 5th ed.,* 913). And I do not doubt that there is scarcely a town or ward in the state where the assessors do not violate their oaths by assessing the taxable property in their towns or wards at sums much less than its true value. I am told that assessors quiet their consciences by reason of the common custom of all assessors to assess property at about one-third or one-quarter of its true value. I admit such a custom produces no injustice where all are assessed in proportion, at sums less than the law requires; but where one tax-payer's property is assessed (as the relator's has been), at its full and true value, when that of others is assessed at only one-quarter or one-third of its true value, very shameful injustice is done to such one tax-payer; and he is, practically, without any remedy, for no grand jury has been found to indict assessors for swearing they have assessed their property at its full and true value when they have assessed it at only from one-quarter to one-third of its actual value. They do not condemn the officers who have lessened their taxes by low assessments.

The only effectual way I can think of to provide a remedy

for persons lawfully assessed, as the relator is, for the full value of their property, when the property of other tax-payers is assessed at only one-third or one-quarter of its true value, is for the legislature to pass a law giving to such aggrieved tax-payers a right of personal action against the assessors, for the recovery of double or treble the amount of tax they are compelled to pay by reason of the dispropor-tionate assessments—*i. e.*, assessments of others' property below the values the law requires that they should fix such values. And that remedy might be worse than such griev-ances.

By the act of 1858 (*Laws of* 1858, *chap.* 357, *p.* 600), it is provided respecting rents reserved in leases in fee, that " Whenever assessments are made against any person in any town or ward *in which he does not reside*, the board of supervisors of the county to which such assessments are returned, shall have in all respects as full power and autho-rity, and it shall be their duty to *correct* such assessments as to the valuation of the rents, and as to the gross amount for which such person shall be assessed, *as the assessors have as to residents of a town.*"

It is plain that assessors of a town could not legally " cor-rect " the assessment of any such rents against a resident of their town by reducing such assessment below the sum which the law of 1846 requires the assessors to fix upon it and assess it at; for the reason that when such rents are assessed as required by that law, there is no error for the assessors to correct on the day they review their assessments.

It is true that the act of 1858 further provides, that " such board of supervisors may reduce the amount of such assess-ments (meaning assessments of rents reserved in leases in fee, for lives or for years), in the respective towns or wards of the county *in proportion or otherwise, as the nature of the corrections require, to make such assessments just*" (*Laws of* 1858, *p.* 600). But this act provides for relief by the board of supervisors to only non-residents of the towns

in which they are assessed for the rents mentioned in such act. And it is not to be presumed that the legislature intended to authorize the board of supervisors to reduce the assessments of such rents against *non-residents* lower than the assessors of towns can lawfully reduce them against *residents* when they review their assessments. Some of such rents, in one or more counties, are payable in grain, or other property, the value of which, in money, the assessors are to ascertain and assess in the manner they assess such rents when payable in money (*Laws of* 1846, *p.* 466, § 1). On the day assessors review their assessments, it is their duty to correct any error they have made in assessing rents reserved in leases in fee, or for lives or years, so such assessments will be in conformity with the law of 1846; but they cannot, legally, make any other change in such assessments. And when such rents are assessed against *non-residents* of a town in which they are made, all that the board of supervisors can do is to correct such assessments as to the valuation of the rents and as to the gross amount for which the non-residents have been assessed for such rents; and reduce the amount of such assessments, in proportion or otherwise, as the nature of the corrections require, to make such assessments just (*Laws of* 1858, *p.* 600). And I think what is here meant, "to make such assessments just," is, to correct or reduce them so they will be as the assessors are required to make them by the law of 1846. Any other construction of the act of 1858 would give non-resident owners of such rents a remedy for unjust, or erroneous, or disproportionate assessments of such rents, before the board of supervisors, not given to resident owners of such rents before the assessors of their town, on the day such assessors meet to review their assessments.

It seems to me that, when the defendants examined the assessment rolls of the towns of Kortright and Davenport, and ascertained that the rents chargeable upon lands within those towns reserved to the relator in leases in fee, or for life

Youmans agt. Board of Supervisors of Delaware Co.

or years, were assessed as required by the law of 1846, and that the assessors had correctly specified in the assessment rolls each rent so assessed, and had fixed the correct value upon articles, other than money, in which any of such rents were payable, if there had been any so payable, they had done all the act of 1858 (*Laws of* 1858, *p.* 600) required them to do, and all that the relator could legally or equitably call upon them to do under that act.

I admit that the relator has suffered a grievous wrong by the way the assessors of the towns of Kortright and Davenport assessed the taxable property of residents of those towns; but it is a wrong which, in my judgment, could not be remedied by the defendants, and for which the relator has no remedy by mandamus. I think that some way must be found out to make assessors assess taxable property, other than rents, at its true value, or the relator must find relief against disproportionate assessments and future wrongs in an amendment by the legislature of the law of 1846 and the act of 1858.

For these reasons I am of the opinion that the relator's motion for a peremptory mandamus against the defendants should be denied. But for the hardship of the case as against the relator, no costs of the motion should be allowed.